And we'll begin with our first case for argument, Virchalik, if I'm pronouncing that correctly, versus Metamune, number 1993. Good morning, your honors. May it please the court, my name is Barbara Hart. I'm with the law firm of Lowy Danenberg. I'm here with my colleague David Harrison of Lowy Danenberg. And my co-counsel, Ken Wexler of Wexler Wallace. I would be remiss if I did not note the passing of Judge Batts and the sadness that that brings me. She was my law professor in night school at Fordham and in 1990. And of course, she was an inspiration to women attorneys such as myself when I I would hope that I would have the grace to be heard as disagreeing with her on her ruling and with no disregard for, or dishonor to her. Of course. Thank you. Thank you. Dr. Vyalsalik, Vyarsalik rather, Susan, Dr. Vyarsalik would have liked to have been here today. She's overseeing the reaccreditation of the Bellevue premature infant clinic. This morning, they have the regulators in to oversee that and she apologizes that she is not here. This case involves a key TAM litigation that was filed under seal in 2009 by Dr. Vyarsalik. She is the co-director of the post neonatal intensive care. Look, all of the, all of the information that you put into your proposed amended complaint tracked what was in the state's complaint. Your Honor, are you referring to the second amended complaint? No. Judge Batts did not consider the second amended complaint in her ruling. She ruled that we had delayed in filing it. I know of no case where 38 days after a ruling on a motion to dismiss is deemed to be delay. I believe... I'm confused now. I thought the second amended complaint covered the so-called kickback scheme and in other states other than New York and the New York, the attorney general's case was the New York kickback scheme, correct? Claim kickback scheme. Your Honor, there was a settlement with Trinity in 2005 that alleged the baby was appropriated out of the NICU in violation of HIPAA in order to increase Synergis prescriptions. That's the one you got paid on, right? There was a approximately $22.4 million settlement in regard to Trinity's conspiracy with Metamune. Synergis is Metamune's only drug. For that, relator agreed to an 18%. She didn't negotiate or anything, an 18% bounty. Those bounties can be up to 25%. At that time... She collected $4.4 million, something like that? And then net of attorney's fees? Yes, she did. I am not aware of why that would be germane to whether or not she alleged in 2009 and in subsequent proffers before the AG's office, the U.S. Attorney's office, and the FBI, very significant information that undergirds... Your amended complaint seems to me just to lift allegations almost verbatim from the New York attorney general's complaint. And so on that basis, Judge Sullivan determined, you know, you weren't the... Original source. You weren't the original source. So what do you have to say to that? Thank you. The issue is whether or not we should even be analyzing whether we're the original source. The original source analysis is triggered by the notion that there's a public disclosure that a key TAM relator is piggybacking on. At oral argument, Judge Sullivan opined... I don't understand why you... Let me hear, please, your best... Your explanation of why you're not piggybacking with respect... Not the NICU problems, but you're not piggybacking on the NYAG. We are not piggybacking on the NYAG because if you look at docket 40, you'll find that in 2010, we told the New York AG that there was misappropriation of the NICU information that was being used to boost synergist prescriptions. So there's a black, dark... What allegations then were directly related to any kickback scheme between MedImmune and Trinity that you made? Docket number 40, which was lodged in support of the Trinity settlement by Dr. Vyarsalik, alludes to, you know, it was filed in 2009. There's this long period where it's under seal. We're giving them information, a list of 54 baby names... You don't memorize docket numbers. What's docket 40? Docket 40 is declaration of relator Susan Vyarsalik in support of the settlement, and it goes on extensively to discuss lists of baby names that were being taken. But again, where exactly was the allegation made that was anything different from what the New York State AG's office later alleged with regard to an actual kickback scheme? We know that the first and the earlier allegations concerned misappropriation of baby names as potential candidates for synergist use. But to me as well, it looked as though the second wave from your client largely developed only either by alleging, making allegations with regard to other states, or particular allegations with regard to the kickback scheme in a way that the New York Attorney General had already identified and developed. So I'm asking you in what ways were those allegations actually made by your client first before the NYAG did? And that is what is under submission that was not before the court, which is why we're seeking leave to amend. What was alleged first? Please answer her question. There's a legal theory, which is a kickback theory. That's a framing. There is facts. Those facts were submitted to the New York AG's office in 2009, 2010, and 2011. We did not allege them in the amended complaint. We amended to cure that in the second amended complaint in order to bring to the court. Judge Sullivan says he only considered the original complaint and the amended complaint. And in there, we believed that the relator's status was sufficiently established. It's clear black letter law that in this circuit, after ruling on a motion to dismiss, if a defect is curable, the plaintiff should be given the right to cure. What we're saying is that this information was not first publicly disclosed by the New York AG. That is a misapprehension of how this unfolded. The Supreme Court— Are you taking the baby names, metamuse taking the baby names and sending it to the pharmacies, was originally disclosed by your client? That's correct. And that's established if one looks at the Trinity Settlement. Indeed, the New York AG announces the Trinity Settlement in a press release in 2015 and credits the relator with those facts. The New York AG, in July 2015, says that the relator brought to the attention of the New York AG's office the misappropriation of baby names. Ms. Hart, we have a very heavy schedule today, so I'm going to keep you to your time. You have three minutes of rebuttal. Yes. And you're almost two minutes over right now. Your red light is on. Your red light's been on. Oh, forgive me. That's okay. You'll have a little time on rebuttal, and we'll hear from Mr. Dodds. I commend to you that we should be entitled to cure. You'll have time to speak after you're done. Thank you. Yes. Adversary. May it please the Court, John Dodds for Appellee Metamune. It seems to me that Appellant's position here rests on two premises that are fundamentally flawed and that doom every argument that she makes. The first premise is that Judge Sullivan's decision to dismiss the case based upon the public disclosure bar somehow rested on his perception that there was a pleading deficiency here, that there was something absent from the complaint that was before him at that time. The second is that there was information that Judge Sullivan did not consider, and so his decision was based on a lack of information and a pleading deficiency. I thought the public disclosure bar was based upon the New York AG's action, complaint. Your Honor, it was. So anything beyond that could not be barred, correct? Anything beyond the – I think that's correct, Your Honor. And the public disclosure bar then pertained to the misappropriation of the baby names and of the – if you want to call them – he had a kickback theory that he said it didn't involve direct money being paid, but it had to do with the names. Correct. And that applied to the New York – to – in New York. And then – but my understanding is nothing was barred about the off-label and nothing was barred about – necessarily barred, explicitly barred about the use of the baby names for outside of New York. And that raises a question of whether that's barred – those are barred as just simply being sort of derivative of what New York said, or are they independent claims, right? Is that a good framework for thinking about this? I think that is a good framework, Your Honor. And Judge Sullivan looked at that precise framework because one of the arguments that was made was that after the New York AG filed its complaint, the relator took that complaint and essentially filed an amended complaint that was a carbon copy of it, but added allegations that the same things had been done, the same kickback scheme existed in states outside of New York. Judge Sullivan directed himself to that very issue because the argument was that those outside of New York allegations somehow took this outside of the public disclosure bar. Right. And Judge Sullivan rejected that very argument because those outside of New York allegations were not independent or direct within the meaning of the public disclosure bar statute. They were derivative. The relator took the New York AG complaint, hired a private investigator to go out and see whether they could drum up evidence of similar things outside of the State of New York, and then added that into their complaint. And Judge Sullivan – Why wouldn't – just tell me why that wouldn't be something that the relator should benefit from in terms of ultimate fees, doing that extra work and finding that there was a – there's more to this than just what happened in New York, much more, presumably. I suppose New York was 5 percent, but the real problem was the other 95 percent, which was in other States. Really, Your Honor, three reasons. One is because allowing that would be contrary to the language of the public disclosure bar statute, and there were two iterations of that language, both before March of 2010 and then after. And regardless of which applies here, it would violate that language. The statute, let's use the post-2010 version because I think that's probably the one that's in play here, says that the plaintiff is not an original source or, let's put it this way, is an original source if they provide the information on which the allegations are based, not some information, not additional information, the information on which the allegations are based, or they have knowledge that is independent of and that materially adds to the public disclosure. In this case, Your Honor, that would be the New York AG complaint. And – But it wouldn't be materially adding to the public disclosure to say that the fraud or the wrongdoing occurred in other States? Even if you could say that it is, it would be, Your Honor, and my position is that it wouldn't. That's not all that's required. Well, did the New York AG publicly disclose fraud that was elsewhere? The New York AG? No, Your Honor, you're quite correct. The New York AG did not do that. But that disclosure was not, and this was Judge Sullivan's finding, was not independent of what the New York AG said. And the view here is that the public disclosure bar statute does not allow a relator – and he cited the Supreme Court case of Rockwell quite properly for this point – does not allow a relator to plead one theory. And let's go back to the beginning, if we may, Your Honor. Originally, the relator in the original complaint that was filed in 2009 alleged that Metamune and Trinity promoted synergists for muses that were off-label, that were unapproved and were not medically necessary. The New York AG then conducted its own investigation. And Judge Sullivan cited specifically – and this is critical because he wasn't just looking at the complaint and evaluating the complaint or any of the complaints before him – he had this positive proof that this relator was not the original source for two reasons. One, because the New York AG's representative stood there before him and said so, and he cited that in his opinion. They said that the kickback conduct that was at issue in their complaint was only uncovered based upon their investigation. The relator in the pre-hearing conference we had with Judge Sullivan acknowledged the same thing, and Judge Sullivan relied on this as well. The relator said that they didn't know about the kickback activity. She didn't know about the kickback activity because she had a limited perspective. There's a practice of kickbacks by metamune, but – and the complaint says that the New York AG's complaint refers to this in the context of, I guess, Trinity and the pharmacies in New York. But if the kickback conduct is broader than that, then it's also barred. That's what I'm struggling with a little bit. It is, Your Honor. It is also barred because the relator only went out and did the investigation because of the information that was brought to bear by the Attorney General's  Kagan. Kagan. But you're saying her allegations thereafter were derivative of the initial revelations that were made by the State AG, is that right? Precisely right, Your Honor. And allowing a case to go forward on that basis would be contrary to what the public  It would be a opportunistic bringing of cases to get a bounty, in this case an additional bounty beyond the four plus million dollars, based upon building on someone else's work, and it would not serve the purpose that the anti-kickback statute is designed to serve. She says that the baby, misappropriation of the baby names by Metamune was also in the  baby. Correct? Your Honor, that is what she says. The best evidence of what is accurate is actually found in the record that's been placed before the Court here. And I would direct the Court's attention to three letters that were written on the same day, July 1st of 2015. One by the Department of Justice, one by the New York AG, and one by the relator. And each one of them says that, I'll give you the specific language, the DOJ letter says that after she brought her original information about the baby names, the government expanded their investigation beyond that. That's at the Joint Appendix, page 111. The New York AG's letter is explicit. It says that the New York AG expanded its investigation beyond the relator's personal knowledge and said before Judge Batts that the relator had no knowledge of the kickback scheme. But why wasn't it all premised, really, on the doctor's initial identification of the misuse of the baby name information, first for off-label use, but then for this other unseemly relationship between, that was alleged between the corporate entities? That's certainly, Your Honor. Doesn't it all come out of that in the end? I would say that it comes out of it in this way. What the relator provided was, in effect, a lead. Something was happening at that hospital. What she identified was a scheme, alleged scheme, to promote synergies for uses for which it was not approved. And she acknowledged before Judge Sullivan that that was all she knew about. The New York Attorney General's office then said, and then did, and has explicitly said that it took that information and conducted an entirely different investigation that uncovered the allegations that were in the New York AG's complaint. If, Your Honor, the New York AG's complaint was derivative, so to speak, of – because what we're saying here is she's saying it was essentially derivative of her original complaint. Are you saying that the New York Attorney General did not look at, never was aware of, or understood anything about the Trinity settlement? Oh, no, they were perfect. They were very well aware of it, Your Honor. Did the Trinity settlement contain information about the misappropriation of baby names and that it was going down to the pharmacies? It contained information about the misappropriation of baby names, but it did not contain information about Metamune's involvement in that at all. Who was misappropriating? According to the complaint that was at play then, Trinity. And that's what the letters that I just directed, Your Honor, to make clear. Her allegation and her information was that Trinity was getting the baby names, but she did not know it was coming from Metamune. The New York AG's office determined that. Thank you very much. Thank you. We'll hear from Ms. Hart. Three minutes. Thank you, Your Honors. It's imperative to realize that Mr. Dodd – What did you add besides the fact that the kickback scheme was occurring in locations outside of New York? What did the complaint you wanted to file add? We added other forms of remuneration, Your Honor. There was assistance. Well, none of those have been opined on. We also added the HIPAA misappropriation. So from the inception in 2009 and when Dr. V.R. Slick says AmeriCare gave me 54 names, Trinity gave me 54 names, Vital Care gave me 33 names, she's got a litany of people coming to her with misappropriated HIPAA baby names for marketing purposes, and she provides all of that. It's set forth in docket number 40, which is released publicly at docket 154, and I commend to you it talks about all the information she provided to the New York Attorney General's office in 2009, 2010, 2011. That had to do with the misappropriation of baby names, right? Which is the thing of value, which is the kickback. We're pushing forward and now we have a kickback scheme that is alleged in the Attorney General's complaint. What did you add and when did you add it to the kickback scheme? Your Honors, the legal test is an original source. An original source. Mr. Dodd and I don't disagree on that. Before Judge Batch, she asked him, Mr. Dodd, is that true? Is it an original source? The answer is yes. You have to provide the essential elements of the alleged fraud. And the essential element, I'm sorry, Your Honor, the essential element of the fraud is that people were taking neonatal log book infant names and using it to market it. Why not? She said, no, no. What about the kickback scheme? The kickback scheme, the thing of value is the baby names. Right. So that's the thing. I'm not talking about money. Normal kickbacks or whatever. It's the thing of value. And, Your Honor, during the course of this litigation, she succeeds in getting Bard out of Bellevue. No one can access the NICU log books anymore because investigators come in. She complains about it at Bellevue. And the AG says to us, well, you can't give us a Medicaid claim out of Bellevue. That's because Dr. Viercilic is making them not go to the NICU log books anymore after, like, 2014. The thing of value in the kickback scheme is the NICU log books. She brings that to them in 2009. She brings it to them over and over and over again. They adopt it in the New York AG's complaint. Let me be very clear about this just so we understand. The information that she brought was from the pharmacies. The pharmacies are using these names. It's a conspiracy, Your Honor. Okay, a conspiracy. But the other member of the conspiracy is not named, MedImmune. It's not disclosed because the New York AG's investigation related to MedImmune continues. And what I would like to do is to say she identifies MedImmune's rep. At the time of the original settlement, MedImmune was not named, right? We had already disclosed to the New York AG's office MedImmune's rep in the hospital, Anita Smith. And Anita Smith introduces Angie Lopez of AmeriCare. I'm there for all the meetings, Your Honors. It's in docket number 40. Judge Sullivan expressly indicates he doesn't consider any of that. Mr. Dodd doesn't know any of that. When you look at Judge Rakoff's decision where he's evaluating relator status, you're talking depositions. You're talking something akin to a factual finding at summary judgment. This is a pleading. Did we plead we're an original source? We're asking for leave to amend so that we can further substantiate all of the information we brought in order to establish that we are an original source. Thank you very much. Thank you very much. We'll take the matter under advisement. Thank you very much.